UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLEANN MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 7916 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| THE CATHOLIC BISHOP OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Caroleann Morris brought this suit against the Catholic Bishop of Chicago under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., alleging that she was dismissed from her position as a parochial school teacher because of her age. Doc. 1. The Bishop has moved for summary judgment. Doc. 36. The motion is granted.

## Background

Before setting forth the facts, the court addresses the evidentiary and Local Rule 56.1 issues that the parties raise in three motions. Docs. 48, 52, 67.

First, Morris moves to strike as irrelevant two paragraphs from the Bishop's Rule 56.1(a)(3) statement. Doc. 48 at 1-3. The paragraphs assert facts regarding the ages of the elementary school teachers at Morris's school, Most Blessed Trinity Academy ("MBTA"), as of April 2016. Doc. 37 at ¶¶ 8-9; Doc. 37-8 at 6. (The Bishop asserts that the data is from August 2015, but the cited personnel chart includes teachers who were hired in January and February 2016 and includes information from as late as April 2016). Morris argues that the evidence is irrelevant because she was fired in May 2015, eleven months earlier. But the evidence is not irrelevant just because it includes teachers who were hired after Morris's departure and may not

1

include some teachers who were present at the time of Morris's firing. Doc. 37-8 at 6 (personnel chart showing that six teachers were hired after Morris was fired). Regardless of whether they worked with Morris or were hired shortly after her termination, the fact that four teachers older than Morris worked at MBTA in April 2016 is highly relevant to her claim that the school's management was biased against older teachers. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 643 (7th Cir. 2008) (affirming summary judgment in part because two employees who "were several years older than" the plaintiff were ranked as the best performing employees in the district, and noting that "[a] pattern where the protected-class members sometimes do better and sometimes do worse than their comparators is not evidence of age discrimination") (internal quotation marks omitted); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 986 (7th Cir. 1999) (affirming summary judgment in part because the defendant continued to employ several individuals who "were the same age or older" than the plaintiff). The fact that the average age of MBTA teachers was 49.5, even after any personnel changes made in 2015 and 2016, is likewise relevant to assessing Morris's age discrimination claim. *See Jackson*, 776 F.3d at 986.

Second, Morris moves to strike on hearsay grounds a paragraph from the Bishop's Rule 56.1(a)(3) statement. Doc. 48 at 3-4. The paragraph asserts that at the beginning of the 2014-2015 school year, the parents of three students who had been in Morris's kindergarten or pre-kindergarten classes expressed dissatisfaction with her teaching to assistant principal Sandra Anderson and asked that they not be placed in her second-grade class. Doc. 37 at ¶ 49. The parents' statements are not hearsay because they are offered not for the truth of the matter asserted (*i.e.*, that Morris was, in fact, an unsatisfactory teacher), but rather as evidence that Anderson believed, on the basis of the parents' complaints and requests, that Morris was not adequately performing her job. *See Brill v. Lante Corp.*, 119 F.3d 1266, 1271 (7th Cir. 1997)

(holding that out-of-court statements about an employee were not hearsay because the question was not whether the statements were true, but whether the supervisor had an "honest belief" that the statements were true).

Third, the Bishop moves to strike the affidavit of one of Morris's former students. Doc. 52 at 1-3. Morris offers the affidavit to challenge the Bishop's factual assertions regarding what actually happened during a classroom lesson (of which more below) that prompted Anderson to counsel Morris about her teaching. Doc. 46 at ¶ 59. The court need not resolve the motion because, even if the affidavit were stricken, the relevant portion of Morris's factual assertions (that the student did not cry as a result of the lesson and that the lesson was not fraught with interruptions) would remain supported by Morris's own affidavit. *Ibid*.

Fourth, the Bishop moves to strike the affidavit of Morris's coworker Beverly Beinlich. Doc. 52 at 3-4. Morris offers the affidavit to support her assertion that most of the second-grade students with known behavioral issues were assigned to her class rather than to the class of Eileen Burke, who was in her twenties, and that Anderson picked on Morris as well as Beinlich and Sue Connor, teachers close in age to Morris. Doc. 47 at ¶¶ 7, 8, 14. The court need not resolve the motion because, even if Beinlich's affidavit were stricken, Morris's factual assertions would remain supported by Morris's and Connor's affidavits. *Ibid*.

Fifth, the Bishop moves to strike Morris's assertion in her Local Rule 56.1(b)(3)(C) statement that, during the 2014-2015 academic year, "most of the students with known behavioral issues such as ADHD, anger issues and miscellaneous related psychological problems" were assigned to her class rather than Burke's, insofar as the assertion relies on non-expert psychological diagnoses. Doc. 52 at 4-5. To support her assertion, Morris cites the affidavits of three former MBTA teachers, all of whom are lay witnesses. Doc. 47 at ¶¶ 7-8. In

response to the Bishop's objection, Morris clarifies that the teachers "are not giving an opinion as to a health problem or offering any detailed medical diagnosis regarding the students … assigned to Morris and not to Ms. Burke," but instead base their averments on their "knowledge about students with behavioral issues as opposed to students who do not." Doc. 59 at 10. On that understanding, the court will disregard Morris's reference to ADHD and other "psychological problems," and will interpret her Local Rule 56.1(b)(3)(C) statement as an assertion about the readily observable behavioral problems of the students in her class. *See* Fed. R. Evid. 701 (providing that a non-expert witness may give opinion testimony that is "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge"); *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565-66 (7th Cir. 2006) (permitting a lay witness to testify that an individual was "depressed" because the witness used the term in its lay, rather than clinical, sense).

Finally, Morris moves to strike many of the Bishop's responses to her Local Rule 56.1(b)(3)(C) statement, Doc. 50, on the grounds that they are extraneous or contain legal argument. Doc. 67. In setting forth the facts below, the court will disregard the portions of the Bishop's responses that contain extraneous matter or contain legal argument.

With these preliminaries resolved, the following facts are set forth as favorably to Morris as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015).

Morris was born on July 10, 1959. Doc. 46 at ¶ 10. She has worked as an elementary school teacher at several schools over the course of her career. *Id*. at ¶ 11. In June 2006, while Morris was teaching at Our Lady of the Wayside, a report noted that she needed improvement in

two areas related to classroom management. *Id*. at ¶ 17. The report was based on, at most, a twenty-minute observation by the principal, and no one at the school ever counseled Morris on her work performance. *Ibid*.

In 2011, Morris was hired by then-principal Sandra Perez as a pre-kindergarten teacher at MBTA, which is operated by the Archdiocese of Chicago. *Id*. at ¶¶ 3, 12. MBTA was a challenging place to teach; it had high student turnover, and most students came from low-income, non-English-speaking families. Doc. 47 at ¶¶ 1-2. It was the norm at MBTA for students to exhibit behavioral problems in the classroom. *Id*. at ¶ 2.

Sister Erica Jordan took over as the principal of MBTA after the 2011-2012 school year. Doc. 46 at ¶ 13. Jordan asked Morris to teach kindergarten for the 2012-2013 school year and then moved her to second grade for the 2013-2014 school year. *Ibid*. Jordan testified that after she observed Morris's second-grade classroom early in the year and found the children loud and off task, she had an informal conversation with Morris about how her classroom operated. *Id*. at ¶ 41. Morris disputes that her classroom was loud during the 2013-2014 year and asserts that she always knew the lessons she was teaching, but she does not dispute that this conversation with Jordan occurred. *Ibid*.; Doc. 45-4 at ¶ 10.

In late October or early November 2013, Sandra Anderson joined MBTA as a volunteer and later was named the assistant principal. Doc. 50 at ¶ 9. Jordan told the MBTA faculty that Anderson would help to mentor them. Doc. 47 at ¶ 12. Soon after she arrived, Anderson began "picking on" Morris and two other teachers close to Morris in age, Sue Connor and Beverly Beinlich. *Id*. at ¶ 14.[*]

---

[*] Morris's brief and Connor's affidavit assert that Anderson regularly sent reading and behavior specialists to the classroom of a younger teacher, Eileen Burke, while denying other teachers' requests for the specialists' assistance. Because those assertions are not included in Morris's

5

As part of her job, Anderson observed and evaluated teachers' classroom performance. Doc. 46 at ¶ 30. Anderson made hiring and firing decisions in conjunction with Jordan, who had final authority. Doc. 47 at ¶¶ 11, 13. Anderson conducted several formal observations of Morris during the 2013-2014 year. Doc. 46 at ¶ 39. After each observation, Anderson provided Morris with feedback and suggestions for improvement. *Id*. at ¶ 40. Anderson gave Morris constructive criticism in December 2013 and offered a critique of Morris's performance in February 2014, with which Morris disagreed. *Id*. at ¶ 44.

At Anderson's request, a behavioral specialist, Joanne Gordon, observed Morris's classroom in 2014. *Id*. at ¶ 42. Neither Anderson nor Jordan had ever asked Gordon to conduct a general observation of a teacher at MBTA. Doc. 47 at ¶¶ 39-40. Gordon's report noted that the students in Morris's classroom were shouting and not paying attention, and also that Morris was teaching an age-inappropriate lesson. Doc. 46 at ¶ 43. Gordon concluded that Morris did not have the skills to address her students' behavior problems. *Ibid*. Morris denies all of Gordon's observations. *Ibid*. The court resolves in Morris's favor the dispute over what actually occurred in her classroom.

In May 2014, Morris received a summative evaluation indicating that she needed improvement in student engagement and classroom management. *Id*. at ¶ 45; Doc. 47 at ¶ 34. As Jordan testified, certain other aspects of Morris's performance had improved during the 2013-2014 year. Doc. 47 at ¶ 34. Anderson recommended to Jordan that Morris's contract be

---

Local Rule 56.1(b)(3)(B) response or Local Rule 56.1(b)(3)(C) statement, they are disregarded. *See Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (holding that the predecessor to Local Rule 56.1(b)(3) "provides the only acceptable means of … presenting additional facts to the district court"); *Dunhill Asset Servs. III, LLC v. Tinberg*, 2012 WL 3028334, at *3 (N.D. Ill. July 23, 2012) ("Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion.") (citing cases) (internal quotation marks omitted). Based on the legal analysis set forth below, even crediting Morris's assertions would not alter the outcome of the Bishop's motion.

6

renewed, *id*. at ¶ 35, and Morris was given a contract to teach second grade again during the 2014-2015 school year, Doc. 46 at ¶ 48.

Before a teacher who has been with the Archdiocese for over a year can be removed, the school must show incompetence and also must give the teacher an opportunity to improve her performance. Doc. 47 at ¶ 26. A remediation plan was drawn up for Morris at the end of the 2013-2014 year; the plan provided that she would be given access to consultants to assist her. Doc. 46 at ¶ 46. Morris denies that she ever received or knew about the plan. *Ibid*. She did not sign the plan, as was generally required, and Anderson and Jordan did not carry out several of its provisions. Doc. 47 at ¶¶ 27-28. The disputes over whether Morris was notified of the plan and whether it was actually put in place are resolved in Morris's favor.

At the beginning of the 2014-2015 school year, Morris was the sole second-grade teacher at MBTA. *Id*. at ¶ 3. Due to the large number of second-grade students, the class was split into two and a new teacher was hired. *Id*. at ¶ 4. The new teacher quit after a week and was replaced by Eileen Burke, who, as noted above, was in her twenties. *Ibid*.; Doc. 45 at 8. Anderson and Jordan were responsible for assigning students to the two second-grade classes. Doc. 47 at ¶¶ 5-6. Morris was assigned most of the students with known behavioral issues. *Id*. at ¶ 7. The students in Burke's class did not have similar behavior problems. *Id*. at ¶ 8. According to Anderson, and as noted above, the parents of three students asked that their children not be placed in Morris's class because they were dissatisfied with her performance as a kindergarten or pre-kindergarten teacher. Doc. 46 at ¶ 49.

Anderson observed Morris's teaching on four occasions during the 2014-2015 school year. *Id*. at ¶ 51. Anderson met with Morris and asked a math consultant to intervene on the ground that Morris was not implementing differentiation—that is, she was not creating varied

7

lessons and tasks that engaged students at different skill levels. *Id*. at ¶ 52. Morris does not dispute that Anderson spoke with her about differentiation or that the math consultant came to her classroom, but she asserts that she was appropriately implementing differentiation. *Ibid*. The dispute over whether Morris implemented differentiation is resolved in her favor, but the court accepts that Anderson spoke with Morris about differentiation and that the consultant visited her classroom.

Anderson testified that, after observing Morris's classroom in March 2015, she requested a meeting with Morris to discuss behavior management. Doc. 46 at ¶ 53. Morris does not dispute that Anderson requested a meeting, but asserts that Anderson did not indicate the reason for the meeting. *Ibid*. That narrow dispute is resolved in Morris's favor.

According to Anderson, Morris taught an inappropriate lesson on racism that caused an African-American student to cry. *Id*. at ¶ 59. Anderson also asserts that the classroom was chaotic during that lesson and that she later counseled Morris about those issues. *Ibid*. Morris denies that the student was upset, but does not dispute that Anderson counseled her. *Ibid*. The dispute over what occurred in the classroom that day is resolved in Morris's favor.

At one point, Morris brought a letter to Jordan for translation that Morris intended to send to her students' parents regarding their classroom behavior. Doc. 47 at ¶ 36. Jordan told Morris she did not want Morris to send the letter, and Morris complied. *Ibid*.

In May 2015, Anderson and Jordan told Morris that her contract would not be renewed. Doc. 46 at ¶ 64. At that time, Anderson and Jordan reviewed with Morris her summative evaluation for the 2014-2015 school year. *Ibid*. Morris disagreed with all of the criticism in the evaluation. *Id*. at ¶ 65. Morris was 55 years old at the time of her firing. *See id*. at ¶ 10.

8

As of February 2016, MBTA had seventeen elementary school teachers with ages ranging from 23 to 64 and an average age of 49.5. *Id*. at ¶ 8. Four of the teachers were older than Morris. *Id*. at ¶ 9. Morris's replacement was 48 years old at the time she was hired. *Id*. at ¶ 67; Doc. 37-8 at 6.

## Discussion

The Bishop contends that an age discrimination plaintiff "may establish her claim using either the direct or indirect methods of proof" and that Morris "relies solely on the indirect method, which is based on the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." Doc. 38 at 3. In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit rejected the distinction between the direct and indirect methods for opposing summary judgment, stating that "[t]he time has come to jettison these diversions and refocus analysis on the substantive legal issue." *Id.* at 764. The substantive legal issue in *Ortiz* was "[w]hether a reasonable juror could conclude that Ortiz would have kept his job if he had a different ethnicity, and everything else had remained the same." *Ibid.* The district court appeared to have considered some evidence under the "direct method" but not under the "indirect method," and vice versa, *id*. at 763, and the Seventh Circuit held that to be reversible error, *id*. at 767. In the process, the Seventh Circuit overruled numerous precedents "to the extent that [they] insist on the use of the direct-and-indirect framework." *Id.* at 765-66. *Ortiz* also overruled precedents that instructed district courts to determine under the direct method whether the plaintiff had presented a "convincing mosaic" of circumstantial evidence. *Id.* at 764-65.

To survive summary judgment, then, a plaintiff must present evidence that, considered as a whole, would allow a reasonable juror to conclude that she was discriminated against due to a

9

protected characteristic, suffering an adverse employment action as a result. *See Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 899 (7th Cir. 2016). *McDonnell Douglas* identifies one pattern of evidence that would enable a reasonable juror to find discrimination—namely, a pattern showing that the plaintiff belonged to a protected class, met her employer's legitimate expectations, suffered an adverse employment action, and was similarly situated to other employees who were not members of the protected class and who were treated better, provided that the defendant fails to articulate a reasonable alternative explanation or the plaintiff shows that the proffered alternative explanation is a pretext. But the *McDonnell Douglas* pattern is just one way that the record evidence could enable a reasonable juror to find discrimination. *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (noting that *McDonnell Douglas* provides "a common, but not exclusive, method of establishing a triable issue of intentional discrimination") (internal quotation marks omitted). A court must not confine its analysis to *McDonnell Douglas* (unless the plaintiff limits herself to the *McDonnell Douglas* framework) or treat some evidence as relevant under *McDonnell Douglas* but not to the broader question whether "a reasonable factfinder [could] conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765.

"To establish a disparate-treatment claim under … the ADEA … a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). One piece of evidence weighs very heavily against Morris's claim: the teacher hired by Anderson and Jordan to replace Morris was 48 years old, just seven years younger than Morris was when she was fired, and just six years younger than Morris was

when Anderson began picking on her. The fact that Anderson and Jordan hired a replacement so close in age to Morris strongly suggests that her age was not the but-for cause of her firing.

The Seventh Circuit has held that anything less than a ten-year difference in age between a plaintiff alleging discriminatory discharge and her replacement is "presumptively insubstantial" and does not create an inference of age discrimination. *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997); *see also Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 475 n.4 (7th Cir. 2008). Of course, in keeping with *Ortiz*'s command to consider the entire record rather than to mechanically apply legal tests, an insubstantial age gap does not necessarily doom an age discrimination claim. But to create a viable inference of discrimination in those circumstances, the plaintiff must "direct[] the court to evidence that her employer considered her age to be significant." *Hartley*, 124 F.3d at 893; *see also Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 659 (7th Cir. 2001).

The only age-related evidence offered by Morris is: (1) Anderson assigned the second-grade students with behavioral problems to Morris rather than to Burke, who was in her twenties; and (2) Anderson "picked on" Morris and two other teachers close to her age. In isolation, those alleged instances of disparate treatment might possibly suggest that Anderson harbored ageist sentiments and acted on those sentiments when firing Morris. But any such inference is very weak and cannot survive the fact that Morris was replaced by a person who was 48 years old, eight years older than the threshold for protection under the ADEA, *see* 29 U.S.C. § 631(a), and just seven years younger than Morris was at the time of her firing. On this record, no reasonable juror could find that Anderson fired the 55-year-old Morris because of her age given that Anderson immediately thereafter hired a 48-year old to replace her. *See Hartley*, 124 F.3d at 893 (granting summary judgment because the six- and seven-year age gaps between the plaintiff and

11

two coworkers were "presumptively insubstantial" and because "the record reveals no evidence that [the defendant] viewed the [plaintiff's] age of 51 itself to be significant"); *Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1029 (7th Cir. 1998) (granting summary judgment because "a seven-year age difference is a presumptively insubstantial gap" and because "the record reveals no evidence that [the defendant] viewed the age of 52 to be significant"); *Bennington*, 275 F.3d at 659-60 (granting summary judgment because the five-year age difference was presumptively insubstantial and because the defendant's alleged mistreatment of the plaintiff did not "evidence hostility on the basis of age"). The fact that, just eleven months after Morris's firing, four out of seventeen elementary school teachers at MBTA were older than Morris, and that the average age of those seventeen teachers was 49.5 years, provides confirmation (though no confirmation is necessary) for that conclusion. *See Faas*, 532 F.3d at 643; *Jackson*, 176 F.3d at 986.

Because Morris has failed to present evidence from which a reasonable juror could find that she was fired because of her age, it makes no difference whether Morris did or did not have problems with classroom management, or even whether Anderson and Jordan treated her unfairly in some way. As long as the reason for Morris's dismissal was not her age—which, for the reasons just stated, it indisputably was not—her age discrimination case necessarily fails. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516 (1993) (holding that an employer may be liable for discrimination only if the plaintiff shows "that the [employer's proffered] reason was false, *and* that discrimination was the real reason"); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 754 (7th Cir. 2006) (noting that when the plaintiff's evidence fails to create an inference of discrimination, "it is unnecessary to reach the issue of pretext"); *Wallace v. SMC Pharm., Inc.*, 103 F.3d 1394, 1399 (7th Cir. 1997) (observing that the plaintiff "must persuade the trier of fact that the true reason [for the adverse employment action] was a discriminatory one").

**Conclusion**

The Bishop's summary judgment motion is granted. Judgment will be entered in favor of the Bishop and against Morris.

May 4, 2018

_____
United States District Judge